UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **RSUI INDEMNITY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CASE NO. |
| ) | |
| **SCI DIRECT, INC. d/b/a** ) | |
| **NEPTUNE SOCIETY and** ) | |
| **LINDA ALLARD,** ) | |
| ) | |
| **Defendants,** ) | |

## COMPLAINT

Plaintiff, RSUI INDEMNITY COMPANY ("RSUI"), by and through its attorneys, RAINEY KIZER REVIERE & BELL PLC, complains of Defendants, SCI DIRECT, INC. d/b/a NEPTUNE SOCIETY ("SCI") and LINDA ALLARD ("Underlying Plaintiff"), as follows:

### NATURE OF ACTION

1. RSUI brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a declaration respecting its coverage obligations, if any, owed to SCI.

2. RSUI seeks a declaration that the policies of excess liability insurance issued to SCI do not provide a duty to indemnify SCI in connection with a lawsuit styled *Linda Allard, et al. v. SCI Direct, Inc. d/b/a Neptune Society* currently pending under case number 16-cv-1033 in the U.S. District Court for the Middle District of Tennessee ("the Underlying Lawsuit").

3. RSUI's duty to indemnify is ripe for adjudication because Underlying Plaintiff issued a settlement demand to SCI in excess of $85 million, and RSUI is being called upon to contribute to the settlement on behalf of SCI.

## JURISDICTION AND VENUE

4. RSUI is a New Hampshire corporation with its principal place of business in Georgia.

5. SCI is a Florida corporation with its principal place of business in Texas. This Court has personal jurisdiction over SCI because SCI conducts significant amounts of business within this District, SCI has appeared in the Underlying Lawsuit in this District, and the alleged misconduct in the Underlying Lawsuit took place in this District.

6. Underlying Plaintiff is a citizen of Tennessee.

7. RSUI and SCI and Underlying Plaintiff are citizens of different States, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Because the parties to this lawsuit are citizens of different States and the amount in controversy exceeds $75,000, this Court has jurisdiction of this lawsuit under 28 U.S.C. § 1332.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

**A. THE UNDERLYING LAWSUIT**

9. The Underlying Lawsuit was filed as a purported class action lawsuit by Underlying Plaintiff.

10. The Underlying Lawsuit arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

11. The most recent complaint in the Underlying Lawsuit is a First Amended Class Action Complaint ("First Amended Complaint"). A copy of the First Amended Complaint is attached hereto as Exhibit "A."

12. The First Amended Complaint alleges that in approximately February 2013, SCI began placing telephone calls to Underlying Plaintiff's cellular telephone using a prerecorded voice advertising SCI's funeral arrangement services.

13. The First Amended Complaint alleges that Underlying Plaintiff never gave SCI prior express written consent to place prerecorded or autodialed calls to her cellular telephone.

14. The First Amended Complaint alleges that Underlying Plaintiff asked SCI to stop calling her.

15. The First Amended Complaint alleges that on August 4, 2014, SCI placed another prerecorded call to Underlying Plaintiff's cellular telephone explaining that Underlying Plaintiff still had time to sign up for SCI's services before prices increased.

16. The First Amended Complaint alleges that Underlying Plaintiff called SCI and left a voicemail asking SCI not to contact her again. Underlying Plaintiff also contacted SCI's corporate office and left a voicemail asking them not to contact her.

17. The First Amended Complaint alleges that on August 11, 2014, SCI responded to Underlying Plaintiff, writing: "We sincerely apologize for your receipt of any unsolicited advertisement materials and telephone calls. We will promptly remove the address and telephone number listed in this complaint from our system."

18. The First Amended Complaint alleges that on September 17, 2014, SCI placed another prerecorded call to Underlying Plaintiff's cellular telephone.

19. The First Amended Complaint alleges that the subject matter of the calls, funeral arrangements, was upsetting to Underlying Plaintiff.

20. Count I of the First Amended Complaint alleges that SCI's calls violated Section 227(b) of the TCPA.

21. Count II of the First Amended Complaint alleges that SCI's calls violated Section 227(c) of the TCPA.

22. In the First Amended Complaint, Underlying Plaintiff seeks the following types of damages:

(a) $500 in statutory damages for each call placed in violation of Section 227(b) of the TCPA;
(b) treble damages for texts willfully or knowingly made in violation of the TCPA;
(c) $1,750 in statutory damages for each call placed in violation of Section 227(c) of the TCPA;
(d) $500 in statutory damages for each call placed in violation of Section 227(c) of the TCPA.
(e) $1,500 in statutory damages for each call placed in violation of Section 227(c) of the TCPA.

23. The First Amended Complaint is styled as a class action lawsuit, brought on behalf of a group of individuals that allegedly includes hundreds, if not thousands, of individuals nationwide.

**B.     DISCOVERY IN THE UNDERLYING LAWSUIT**

24. Dolores Ramos, the Senior Vice President of Operations for SCI, executed an Affidavit in the Underlying Lawsuit. A Copy of the Ramos Affidavit is attached hereto as Exhibit "B."

25. According to Ramos, SCI is a provider of pre-need cremation services.

26. According to Ramos, as part of SCI's business, SCI contacts potential customers via telephone to set up appointments and to briefly explain SCI's services with potential customers.

27. According to Ramos, in February 2013, SCI received a completed mailer card from Underlying Plaintiff indicating, "Yes! I want to learn more information about SCI's pre-need cremation services."

28. On October 7, 2016, SCI served its responses to Underlying Plaintiff's First Set of Interrogatories. A copy of SCI's answers to Underlying Plaintiff's First Set of Interrogatories is attached hereto as Exhibit "C."

29. In its answers to Underlying Plaintiff's First Set of Interrogatories, SCI answered that SCI employees, on SCI's behalf, made telephone calls to Underlying Plaintiff on February 11, 2013, February 12, 2013, and March 6, 2013.

30. In its answers to Underlying Plaintiff's First Set of Interrogatories, SCI answered that it placed telephone calls to Underlying Plaintiff on February 11, 2013, February 12, 2013, and March 6, 2013 in response to the mailer card SCI received from Underlying Plaintiff indicating that she was interested in SCI's cremation services.

31. In its answers to Underlying Plaintiff's First Set of Interrogatories, SCI answered that the telephone calls made by SCI employees on February 11, 2013, February 12, 2013, and March 6, 2013 were "manually" placed "using a Cisco Model 7941 phone system" or employees' personal cellular telephones.

32. Jon Halprin, who worked for SCI from December 2012 to June 2015, executed an Affidavit in the Underlying Lawsuit. A copy of the Halprin Affidavit is attached hereto as Exhibit "D."

33. According to Halprin, he was responsible for oversight of the sales team at SCI's Neptune Society branch located in Nashville, Tennessee.

34. According to Halprin, his sales team at SCI was responsible for following up with new customer leads including through telephone calls.

35. According to Halprin, SCI's corporate office would send his branch ten to fifty leads per week.

36. According to Halprin, his sales team at SCI would make cumulatively between fifty and one hundred calls to new leads per day.

37. According to Halprin, all "calls made by the sales team to leads had the ultimate goal of making a sale of" SCI's services.

38. According to Halprin, his branch used a tool called "CallFire," an internet tool that allows the user to upload telephone numbers to be called, set certain parameters on how calls are made (such as number of retries, times to call, etc.), and then the system automatically dials the uploaded telephone numbers according to the set parameters.

39. According to Halprin, when CallFire reached a person or answering machine, CallFire would play a prerecorded message or a text-to-speech message read by a computer.

40. According to Halprin, his branch used CallFire to make thousands of calls.

41. In its answers to Underlying Plaintiff's First Set of Interrogatories, SCI answered that an unaffiliated third party vendor, without SCI's knowledge, made calls to Underlying Plaintiff on August 4, 2014 and September 17, 2014. Upon information and belief, CallFire was the third party vendor.

42. On November 22, 2016, SCI served its responses to Underlying Plaintiff's First Requests for Admission. A copy of SCI's responses to Underlying Plaintiff's First Requests for Admission is attached hereto as Exhibit "E."

43. In its responses to Underlying Plaintiff's First Requests for Admission, SCI admits that it "made at least one phone call to at least 4,000 unique telephone numbers from May 27, 2012 to May 27, 2017."

44. On January 2, 2017, SCI served its responses to Underlying Plaintiff's Second Requests for Admission. A copy of SCI's responses to Underlying Plaintiff's Second Requests for Admission is attached hereto as Exhibit "F."

45. In its responses to Underlying Plaintiff's Second Requests for Admission, SCI admits that from "October 16, 2013 to the date immediately preceding the date on which [the Underlying Lawsuit] was filed," SCI "placed at least one telephone call to at least 4,000 unique telephone numbers," including calls made on SCI's behalf.

### C. SETTLEMENT DEMANDS IN THE UNDERLYING LAWSUIT

46. In a letter dated April 27, 2016, Underlying Plaintiff issued a Pre-Mediation Settlement Demand to SCI seeking in excess of $60 million.

47. In a letter dated July 21, 2017, Underlying Plaintiff issued a new Pre-Mediation Settlement Demand to SCI seeking in excess of $85 million.

### INSURANCE POLICIES

### A. 2016-2017 POLICY PERIOD

48. RSUI issued a Commercial Excess Liability Policy to "Service Corporation International" as the First Named Insured bearing policy number NHA075564, effective from May 1, 2016 to May 1, 2017 ("2016-2017 RSUI Policy"). A copy of the 2016-2017 RSUI Policy is attached hereto as Exhibit "G."

49. SCI tendered the Underlying Lawsuit to RSUI seeking coverage under the 2016-2017 RSUI Policy.

50. Section I (Excess Liability Insurance) of the 2016-2017 RSUI Policy provides, in relevant part, as follows:

1. Insuring Agreement

a. We will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the "Underlying Insurance" also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

b. This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "Underlying Insurance" except:

(1) We will have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

(2) With respect to any provisions to the contrary contained in this insurance.

51. Section V (Definitions) of the RSUI Policy defines the term "Underlying Insurance" as follows:

1. "Underlying Insurance" means the policies or self-insurance listed in the Schedule of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations. [. . .]

52. The Schedule of Underlying Insurance contained in Item 6 of the Declarations identifies the Commercial General Liability Policy issued by Old Republic Insurance Company to "Service Corporation International" bearing policy number MWZY 307268, effective from May 1, 2016 to May 1, 2017 ("2016-2017 Old Republic Policy"). A copy of the 2016-2017 Old Republic Policy is attached hereto as Exhibit "H."

53. The 2016-2017 RSUI Policy applies in excess of the 2016-2017 Old Republic Policy, and is subject to the same terms, conditions, agreements, exclusions, and definitions as the 2016-2017 Old Republic Policy, unless provided otherwise by the 2016-2017 RSUI Policy.

54. A Broad Form Named Insured Endorsement (Form GL 343 006 0509) to the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

**SECTION II - WHO IS AN INSURED** paragraph **3. a.**, **b.**, and **c.** is replaced by the following:

**3**. Any and all of your subsidiaries in any tier, affiliated, associated or allied companies, corporations, firms or organizations within your control or where you have assumed active management as constituted during the policy period or for which you accept responsibility of placing insurance, participation in any joint venture, partnership or similar endeavor in which any of the Named Insureds may now or hereafter become involved, or companies acquired or formed by you during the policy period will qualify as a Named Insured. However:

    **a**. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed such business described in paragraph **3.** above; and

    **b**. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed such business described in paragraph **3.** above.

55. Upon information and belief, SCI is a subsidiary, affiliated, associated, or allied company, corporation, or organization within the control or active management of Service Corporation International.

56. Section I (Coverages) of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

                  \* \* \*

    b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

57. The Occurrence Definition Change Endorsement (Form GL 343 014 0509) to the 2016-2017 Old Republic Policy provides as follows:

**SECTION V - DEFINITIONS**, definition **13. Occurrence** is replaced by the following:

**13.** "Occurrence" means an accident, happening or event, including continuous or repeated exposure to substantially the same general harmful conditions.

58. The Bodily Injury Definition Changes Endorsement (Form PGL 009 11 03) to the 2016-2017 Old Republic Policy provides as follows:

The definition of "bodily injury" in CG 00 01, Section V - Definitions (CG 00 02, Section VI - Definitions) is replaced as follows:

**3.** "Bodily injury" means bodily injury, mental anguish, mental injury, shock, sickness, or disease sustained by a person, including death resulting from any of these at any time.

59. Section V (Definitions) of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

60. Section I (Coverages) of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

**2. Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

**q.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

\* \* \*

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, [. . .] and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

61. Section I (Coverages) of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

\* \* \*

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

62. Section V (Definitions) of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>     a. False arrest, detention or imprisonment;
>     b. Malicious prosecution;
>     c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>     d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>     e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>     f. The use of another's advertising idea in your "advertisement"; or
>     g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

63. Section I (Coverages) of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Knowing Violation Of Rights Of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
> \* \* \*
>
> **p. Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> \* \* \*

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, [. . .] and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

64. The 2016-2017 Old Republic Policy contains a Multimedia Liability Coverage Endorsement (Form GL 343 012 0511)("Media Liability Endorsement"), which provides as follows:

> The following is added to Coverages (Section I) as relates [sic] to all media, including, but not limited to books, catalogs, magazines, videos, CDs, cassette tapes, and other periodicals published and/or distributed by the "Named Insured", as defined in this Coverage, and custom publishing, printing and "advertising" services performed on behalf of others, by the "Named Insured", as defined in this Coverage; and "film, video and program production activity" by the "Named Insured", as defined in this Coverage.

65. The Insuring Agreement of the Media Liability Endorsement of the 2016-2017 Old Republic Policy provides, in relevant part, as follows:

> I. COVERAGE D
>
>   1. Insuring Agreement
>
>      We shall pay on behalf of the "insured" all "damages" and "claim expense" in excess of the deductible and "self-insured retention" and within the Limit of Liability, as stated in Part 3 of this Coverage, which the "insured" becomes legally obligated to pay because of liability imposed by law or "assumed under contract" as a result of one or more claims arising out of:
>
>      A. Media Liability
>
>      1. any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;
>      2. any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public

      disclosure of private facts, intrusion and commercial appropriation of name or likeness;
3.  infringement of title, slogan, trademark, trade name, trade dress, service mark or service name;
4.  infringement of copyright, plagiarism, piracy or misappropriation of ideas under implied contract; or
5.  "unfair competition" but only when alleged in conjunction with the types of "claims" named in 3. and 4. above;

  committed in the utterance or dissemination of "matter" by or with permission of the "insured" during the policy period in multimedia activities and related "advertising", regardless of when "claim" is made or "suit" is brought.

66.  The Media Liability Endorsement sets forth the following definitions of terms quoted in the Insuring Agreement:

 4.  Definitions As Used In This Endorsement

       * * *

"Advertising" means advertising, publicity, or promotion of any kind of multimedia activities, scheduled productions, or of the products and services of others.

       * * *

"Damages" means all forms of monetary "damages", including actual "damages", statutory "damages", and punitive or exemplary "damages", and legal expense or other costs included as part of a judgment or settlement.
"Damages" does not include:

 A.  production costs, loss of profits, or the cost of recall, return, reproduction, reprinting or correction of "matter' by the "insured", any "additional insured" or any indemnitee; or
 B.  fines and penalties, including governmental or criminal fines or penalties, or fines and penalties by ASCAP, SESAC, BMI or other music licensing organizations;

 or any "claim expense" resulting there from.

       * * *

"Insured" means the "Named Insured" and any "subsidiary", and each person who is a director, officer, stockholder, partner, trustee or "employee" thereof, but only while acting within the scope of their duties as such.

"Matter" means printed, audio, visual or information content, and the use of such "matter" by others.

"Multimedia activities" means:

A. the researching, preparation, publication, republication, serialization, production, release, exhibition or distribution of "scheduled media";
B. a broadcast, telecast or cablecast over "scheduled media"; or
C. the execution of a contract to publish, broadcast, produce or advertise "scheduled media".

Named insured" means the following persons or organizations:

Service Corporation International and any subsidiary or division thereof.

\* \* \*

"Scheduled media" means all media, including, but not limited to books, catalogs, magazines, videos, CD's, cassette tapes, and other periodicals published and/or distributed by the "named insured", and custom publishing, printing and "advertising" services performed on behalf of others.

67. The Schedule in the Media Liability Endorsement provides, in relevant part, as follows:

$4,000,000  "each loss" inclusive of "claims expenses" excess of
$1,000,000  "Self-Insured Retention"

General aggregate – refer to Declarations Page.

68. The Media Liability Endorsement defines the term "each loss" to mean the following:

"Each loss" means all "damages" and "claim expenses" arising out of the utterance of disseminations of "matter" and the gathering, acquisition and obtaining of "matter" on one or more dates during a policy period or policy periods relating to the same subject, person, or class of persons, regardless of the number of repetitions, alterations, or forms of communication.

## COUNT I
## NO DUTY TO INDEMNIFY (COVERAGE A)

69. RSUI restates and realleges Paragraphs 1 through 68 above as and for Paragraph 69, as if fully set forth herein.

70. RSUI does not owe a duty to indemnify SCI in the Underlying Lawsuit under Coverage A of the 2016-2017 RSUI Policy for the following reasons:

A. The Underlying Lawsuit does not seek damages for "bodily injury" or "property damage."

B. Any injury or damage alleged or at issue in the Underlying Lawsuit was not caused by an "occurrence."

C. Any injury or damage alleged or at issue in the Underlying Lawsuit was expected or intended from the standpoint of SCI or SCI's employees.

D. Any injury or damage alleged or at issue in the Underlying Lawsuit arose directly or indirectly out of an action or omission that violates or is alleged to violate the TCPA.

**WHEREFORE,** Plaintiff, RSUI INDEMNITY COMPANY ("RSUI"), prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2016-2017 RSUI Policy, together with the following relief:

a. That this Court find and declare that RSUI has no duty to indemnify SCI under Coverage A of the 2016-2017 RSUI Policy in the Underlying Lawsuit;

b. That this Court grant such other and further relief as it deems just and equitable.

### COUNT II
### NO DUTY TO INDEMNIFY (COVERAGE B)

71. RSUI restates and realleges Paragraphs 1 through 70 above as and for Paragraph 71, as if fully set forth herein.

72. RSUI does not owe a duty to indemnify SCI in the Underlying Lawsuit under Coverage B of the 2016-2017 RSUI Policy for the following reasons:

A. The Underlying Lawsuit does not seek damages for "personal and advertising injury."

B. Any injury or damage alleged or at issue in the Underlying Lawsuit was caused by or at the direction of SCI or an employee of SCI with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

C. Any injury or damage alleged or at issue in the Underlying Lawsuit arose directly or indirectly out of an action or omission that violates or is alleged to violate the TCPA.

**WHEREFORE,** Plaintiff, RSUI INDEMNITY COMPANY ("RSUI"), prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2016-2017 RSUI Policy, together with the following relief:

a. That this Court find and declare that RSUI has no duty to indemnify SCI under Coverage B of the 2016-2017 RSUI Policy in the Underlying Lawsuit;

b. That this Court grant such other and further relief as it deems just and equitable.

## COUNT III
## NO DUTY TO INDEMNIFY (COVERAGE D)

73. RSUI restates and realleges Paragraphs 1 through 72 above as and for Paragraph 73, as if fully set forth herein.

74. RSUI does not owe a duty to indemnify SCI in the Underlying Lawsuit under Coverage D of the 2016-2017 RSUI Policy for the following reasons:

A. The Underlying Lawsuit does not relate to media published or distributed by SCI, custom publishing, printing, or "advertising" by SCI on behalf of others, or "film, video and program production activity" by SCI.

B. The Underlying Lawsuit does not seek "damages" because of liability imposed by law as a result of a claim arising out of any enumerated definition of Media Liability.

C. Any claim that may have arisen out of an enumerated definition of Media Liability was not committed in the utterance or dissemination of "matter" by SCI in "multimedia activities" and related "advertising."

D. The Underlying Lawsuit does not seek "damages."

**WHEREFORE,** Plaintiff, RSUI INDEMNITY COMPANY ("RSUI"), prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2016-2017 RSUI Policy, together with the following relief:

a. That this Court find and declare that RSUI has no duty to indemnify SCI under Coverage D of the 2016-2017 RSUI Policy in the Underlying Lawsuit;

b. That this Court grant such other and further relief as it deems just and equitable.

**DATED:** **July 28, 2017**          Respectfully submitted,

          RAINEY, KIZER, REVIERE & BELL, PLC

          By: _s/ Bradford D. Box_
              BRADFORD D. BOX (BPR No. 016596)
              ADAM P. NELSON (BPR No. 033681)
              *Attorneys for RSUI Indemnity Company*
              209 East Main Street
              P.O. Box 1147
              Jackson, Tennessee 38302
              (731) 423-2414